NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0890n.06
Filed: November 10, 2005

No. 04-4449

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
|  | ) | |
|  | ) | |
| UNITED STATES OF AMERICA, | ) | |
|  | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
|  | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE |
|  | ) | NORTHERN DISTRICT OF |
| ANTJUAN ADKINS, | ) | OHIO |
|  | ) | |
| Defendant-Appellant. | ) | |
|  | ) | |

BEFORE: MARTIN, GIBBONS, and GRIFFIN, Circuit Judges.

PER CURIAM.

Defendant Antjuan Adkins ("Adkins") appeals his conviction and sentence pursuant to 18 U.S.C. § 922(g)(1) for the possession of a firearm as a convicted felon. Adkins was convicted on September 14, 2004, after a jury trial and sentenced to eighty-four months imprisonment to be followed by a three-year period of supervised release. On appeal, Adkins contends that the evidence presented at trial was insufficient to result in his conviction and that the district court erred in sentencing when it treated the sentencing guidelines as mandatory. We affirm defendant's conviction, vacate his sentence, and remand for resentencing pursuant to the advisory guidelines.

I.

On February 28, 2004, Patrick Mulligan ("Mulligan"), an officer of the Youngstown, Ohio Police Department, radioed his dispatcher with information he received by cell phone from another officer indicating that drugs were being sold at a specific address in Youngstown, Ohio. The other officer's tipster purportedly identified the seller as a black male, approximately six feet tall, wearing a black and white jump suit. Officer Mulligan and another officer proceeded to the location and pulled into the driveway of the residence.

At the trial, Mulligan recounted the sequence of events, testifying that when the patrol car pulled into the driveway of the residence, a male wearing a dark green and white jumpsuit, later identified as Adkins, immediately began running to the back of the residence. Mulligan followed on foot, yelling for him to stop. As Adkins attempted to climb a six-foot-high chain link fence, Mulligan grabbed onto some of Adkins's clothing and was thereafter pulled over the fence by Adkins. Mulligan stated that, during the fall, his holstered gun and his baton came loose and fell to the ground. After Mulligan fell, he attempted to recover his gun, which had landed several feet away, while simultaneously keeping Adkins from reaching it. After retrieving his gun, Mulligan resumed chasing Adkins.

Adkins ran through the backyard of the neighboring house and eventually headed west on Warren Avenue, while Mulligan followed approximately twenty-five feet behind. Mulligan testified that he followed with his gun drawn, as he observed Adkins reaching into his waistband with his right hand in a manner consistent with a person holding a gun.

Mulligan next observed Adkins run around a green and white house located on Warren Avenue. Adkins ran across the front of the house, in front of the bushes, and then around the west side of the house towards the back of the house. Mulligan perceived Adkins's direction of escape and headed around the east side of the house, towards the back yard, in order to intercept Adkins. While Mulligan was cutting across a vacant lot in order to intercept Adkins, he could observe Adkins in the back yard of the house. Specifically, Mulligan testified that he observed Adkins holding a gun in his left hand, slow down to a trot, dip down, and place the gun in a green trash can, unknowingly running towards the officer. Upon seeing Adkins discard the weapon, Mulligan holstered his own weapon and ran toward Adkins.

Mulligan ordered Adkins to turn around and place his hands behind his back. A brief scuffle ensued, and Adkins broke free, running to the front yard and further west down Warren Avenue. Mulligan radioed for help and continued to chase Adkins. Several houses down, Mulligan, with the assistance of a recently arrived officer, finally apprehended Adkins. After Adkins was secured into custody, Mulligan returned to the green trash can and retrieved a loaded .45 caliber handgun. The government presented evidence at trial that the handgun was stolen from a residence in 1997.

Adkins also testified at the trial. According to Adkins, he ran instinctually from the officers upon their arrival through the backyard and over the chain link fence. Upon his attempt to scale the fence, Mulligan grabbed Adkins's backside, causing his pants to come down. After he stood back up, Adkins pulled his pants back up and continued to flee until he could go no further. Adkins

specifically denied ever rounding a house on Warren Avenue, approaching the green trash can, or possessing a firearm on the day in question.

The jury returned a verdict of guilty on September 14, 2004, finding that Adkins possessed a firearm as a convicted felon on or about February 28, 2004. The jury also found, by way of a special interrogatory, that the firearm in Adkins's possession had been stolen. At sentencing, Adkins's criminal history was determined to be at Category III, and his offense level under U.S.S.G. § 2K2.1 was 26, with Level 24 as his base offense level. The district court sentenced Adkins to eighty-four months incarceration and three years supervised release under the sentencing guidelines. This appeal followed.

II.

First, defendant claims that the evidence at trial was insufficient to sustain a guilty verdict that he was in possession of the firearm. We disagree.

"When reviewing the sufficiency of the evidence to support a criminal conviction, the 'relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Wood*, 364 F.3d 704, 716 (6th Cir. 2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The elements for conviction pursuant to 18 U.S.C. § 922(g)(1) are: (1) that the defendant has a prior conviction for a crime punishable by imprisonment for a term exceeding one year; (2) that the defendant thereafter knowingly possessed the firearm and ammunition; and (3) that the firearm traveled in or affected interstate commerce. The first and third

elements are not in dispute. The second element, knowing possession, may be sustained by evidence of "either actual or constructive possession." *United States v. Arnold*, 410 F.3d 895, 904 (6th Cir. 2005). "Both actual and constructive possession may be proved by either direct or circumstantial evidence." *Id.* (quoting *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973)).

Both the defendant and Mulligan presented an account of the events of February 28, 2004, through testimony at trial. Defendant has submitted that Mulligan's testimony is inconsistent; specifically, that "a fall over a six foot chain link fence, particularly one which dislodged the officer's holstered firearm and baton and caused Mr. Adkins's sweat pants to be pulled down would likely have caused him to loose [sic] hold of a heavy firearm tucked in the waistband of the sweat pants." We are not inclined, nor are we permitted, to agree with this conclusion.

An appellate court is precluded from independently assessing the credibility of witnesses, a matter within the clear province of the trial court. *United States v. Bearden*, 274 F.3d 1031, 1039 (6th Cir. 2001). "To do otherwise would 'invade the province of the jury as the sole finder of fact in a jury trial.'" *Id.* (quoting *United States v. Adamo*, 742 F.2d 927, 935 (6th Cir. 1984)). "In assessing the sufficiency of evidence supporting a conviction, 'we do not weigh the evidence presented, consider the credibility of witnesses, or substitute our judgment for that of the jury.'" *United States v. Sanders*, 404 F.3d 980, 987 (6th Cir. 2005) (quoting *United States v. Davis*, 177 F.3d 552, 558 (6th Cir. 1999) (citation omitted)). Mulligan testified that he witnessed the defendant in possession of a firearm, and that he personally observed the defendant conceal the firearm in a green trash can. Defendant categorically denied possessing a firearm. The jury found Mulligan's

testimony credible.  Based on these facts, viewed in a light most favorable to the prosecution, any

rational trier of the facts could have found that Adkins possessed the firearm.  We will not disturb

such a finding.

### III.

It is clear from the record of the sentencing hearing, which occurred prior to the Supreme

Court's opinion in *United States v. Booker*, 125 S.Ct. 738 (2005), that the district court viewed the

sentencing guidelines as mandatory, not advisory, at the time of Adkins's sentencing.  Adkins was

subsequently sentenced in the middle of the applicable guidelines range.  Treatment of the guidelines

as mandatory constitutes plain error.  *United States v. Barnett*, 398 F.3d 516, 527 (6th Cir. 2005).

Accordingly, we vacate Adkins's sentence and remand for resentencing pursuant to *United States*

*v. Booker*.  *See Barnett*,  398 F.3d at 524-31 (6th Cir. 2005).

For these reasons, we affirm Adkins's conviction, vacate Adkins's sentence, and remand the

case for resentencing in light of *Booker*.