**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0463n.06
Filed: June 30, 2006

Case No. 04-6306

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| RAYMOND CRUMB, JR., | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| _____ | ) | |

**BEFORE: BATCHELDER, CLAY, and MCKEAGUE, Circuit Judges.**

**ALICE M. BATCHELDER, Circuit Judge.** Raymond Crumb ("Crumb") appeals his conviction and sentence on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), contending that the evidence presented at trial was insufficient to sustain the conviction, that the district court erroneously sentenced him as an armed career criminal, and that the district court erred by treating the U.S. Sentencing Guidelines as mandatory in imposing his sentence. We find that sufficient evidence supports Crumb's conviction and find no error in the district court's determination that Crumb is an armed career criminal, or in the court's calculation of Crumb's guideline range, but we must remand the case to the district court for re-sentencing under *United States v. Oliver*, 397 F.3d 369 (6th Cir. 2005).

**I. Factual and Procedural History**

On September 1, 2003, Crumb was living with his girlfriend, Jessica Strickland ("Jessica"), and Jessica's four children, at Jessica's parents' home in Memphis. Jessica's parents, Willie and Beatrice Strickland ("Mr. and/or Mrs. Strickland"), are in their 70s, and Mr. Strickland had just returned from the hospital after a two-and-one-half-week stay. Mr. Strickland was in the yard working on his lawn mower and Mrs. Strickland was in the house when Crumb and Jessica began fighting in a back bedroom of the house. Mrs. Strickland attempted to intervene in the fight, and Crumb began to choke her. When Mr. Strickland, holding a pocketknife/screwdriver that he had been using to fix the lawn mower, told Crumb to leave Mrs. Strickland alone, Crumb jumped on Mr. Strickland, began choking him, and seizing a nearby pistol, pistol-whipped Mr. Strickland and threatened to kill all three of them.

After Jessica ran across the street to a neighbor's house and called the police, Crumb called his father, who agreed to come and get him at the Stricklands' home. Crumb began packing his belongings into garbage bags, and Mr. Strickland saw him put the pistol into one of the bags. While waiting for his father to arrive, Crumb pushed Mr. Strickland off the front porch and hit him. When Crumb's father arrived, Crumb got into his father's van, but before he could leave, the police arrived. By this time a crowd had gathered to watch the fray. Warned by the crowd that a person in the van had a gun, the police approached the van with their guns drawn and ordered Crumb and his father to show their hands. Crumb's father complied with the demand, but Crumb did not. Refusing to show his hands as he exited the van, he kept one hand behind him as if he were concealing a weapon, and shouted "go ahead and kill me, kill me." Eventually submitting to the police, Crumb was handcuffed and put in the police car, where he stayed while the officers searched for the weapon. Because Crumb's father told the officers that he did not have a gun, they looked

2

through the garbage bags containing Crumb's belongings, and found the gun in one of the bags on the passenger side of the van. Seeing what the officers were doing, Crumb became agitated and kicked out the rear windows of the police car and had to be subdued with pepper spray.

The grand jury indicted Crumb on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). Crumb went to trial. His timely motions for a judgment of acquittal were denied, and the jury found him guilty.

At the sentencing hearing in April of 2004, Crumb's counsel advised the court that although he did not object to the facts contained in the Pre-Sentence Investigation Report ("PSR"), he did object to the PSR's recommendation that Crumb be sentenced as an Armed Career Criminal under 18 U.S.C. § 924(e). Specifically, Crumb's counsel argued that four felonies Crumb had committed within a period of less than 24 hours in 1996 were all part of a single criminal episode and should not be considered as felonies committed on occasions different from one another for purposes of applying the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). The court held two evidentiary hearings on the matter and determined that the offenses were in fact separate offenses within the meaning of the ACCA. The district court therefore adopted the PSR's calculation and found the guideline range to be 262-327 months in prison.

The district court noted that this guideline range yielded a significantly higher sentence than Crumb deserved, but that the court was bound by the guidelines. Accordingly, it sentenced Crumb to 262 months in prison and three years of supervised release – the very bottom of the guideline range. After denying Crumb's motions to reopen the sentencing hearing and to vacate and stay the judgment, the district court entered final judgment. Crumb filed a timely notice of appeal.

## II. Sufficiency of the Evidence

3

When reviewing a conviction to determine whether it is supported by sufficient evidence, we view the evidence in the light most favorable to upholding the conviction and ask whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *United States v. Samuel*, 308 F.3d 662, 666 (6th Cir. 2002); *United States v. Blakeney*, 942 F.2d 1001, 1010 (6th Cir. 1991). In assessing the merits of such a challenge, we may not weigh the evidence, assess the credibility of the witnesses who testified, or substitute our judgment for the jury's. *United States v. Bartholomew*, 310 F.3d 912, 922 (6th Cir. 2002); *United States v. Welch*, 97 F.3d 142, 148 (6th Cir. 1996). However, there must be substantial evidence in the record to support the verdict reached; that is, "evidence affording a substantial basis of fact from which the fact in issue can be reasonably inferred." *United States v. Green*, 548 F.2d 1261, 1266 (6th Cir. 1977).

Crumb argues that his conviction should be overturned because several witnesses who testified at his trial were not credible. This is not a challenge to the sufficiency of the evidence, but a claim that he should have been granted a new trial under Federal Rule of Criminal Procedure 33 because the verdict was against the manifest weight of the evidence. When a defendant makes such a motion, the district court may assess witness credibility and we review for abuse of discretion the district court's decision to grant or not grant a new trial. *See United States v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998). In *Tibbs v. Florida*, 457 U.S. 31 (1982), the Supreme Court explained the differences between the two motions:

> [a] reversal [based on the verdict being against the manifest weight of the evidence], unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict. Instead, the appellate court sits as a "thirteenth juror" and disagrees with the jury's resolution of the conflicting testimony. This difference of opinion no more signifies acquittal than does a disagreement among the jurors themselves. . . . A reversal based on the weight of the evidence, moreover, can only

4

occur after the State both has presented sufficient evidence to support conviction and has persuaded the jury to convict. The reversal simply affords the defendant a second opportunity to seek a favorable judgment.

*Id.* at 42.

We reject Crumb's arguments under either theory. Crumb did not move in the district court for a new trial based on the verdict's being against the weight of the evidence, so any challenge based on the manifest weight of the evidence has been waived. Nor would review for plain error or to prevent injustice help Crumb, as his only claim is that the witnesses who testified at his trial were not credible, but he does not point to any testimony that might support that claim. In order to obtain a conviction on a § 922(g)(1) charge, the government must prove (1) the defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year; (2) that the defendant knowingly possessed a firearm thereafter; and (3) that the firearm had traveled in or affected interstate commerce. *United States v. Murphy*, 107 F.3d 1199, 1207 (6th Cir. 1997); *United States v. Adkins*, 153 Fed. App'x 964, 966 (6th Cir. 2005). The testimony presented at trial established the necessary elements of the crime, and our review of that testimony yields no basis for questioning the credibility of the witnesses who provided it.

Finally, to the extent that Crumb intends by this assignment of error to argue a lack of substantial evidence, the claim cannot succeed. The evidence presented at trial was more than sufficient to establish the elements of the offense. Mr. and Mrs. Strickland testified that during the altercation that led to Crumb's arrest they saw him holding the pistol, and that they had seen him with the pistol on earlier occasions; police officers testified that Crumb acknowledged owning the bags of belongings in which the gun was ultimately found; and Crumb's father testified that he never carried a gun in the van and that he did not have a gun in the van on that day. The parties stipulated

5

to Crumb's past convictions, and an expert testified that the gun had traveled in interstate commerce. This claim is without merit.

### III.  Sentencing

**A. Calculation of the Guideline Range**

Crumb challenges the district court's finding he must be sentenced as an armed career criminal.  This is a question of law that we review de novo, although we defer to the district court's findings of fact.  *Murphy*, 107 F.3d at 1208; *United States v. Graves*, 60 F.3d 1183, 1185 (6th Cir. 1995).  18 U.S.C. § 924(e) provides that a person who violates 18 U.S.C. § 922(g) and has three previous convictions for "violent felon[ies]" or "serious drug offense[s]" "committed on occasions different from one another" is an armed career criminal and must be imprisoned for a term of not less than 15 years.  U.S.S.G. § 4B1.4, which applies to § 924(e) offenses, sets the base offense level for armed career criminals at 33 and increases it to 34 if the weapon was possessed in connection with a crime of violence, *see* U.S.S.G. § 4B1.4(b)(3), and sets a minimum criminal history category of IV.  *See* U.S.S.G. § 4B1.4(c)(2).

We have held that, in enacting § 924(e), Congress intended to guard against recidivism, so the statute was meant to apply to defendants who had committed "multiple criminal episodes that were distinct in time, as opposed to multiple convictions arising out of a single criminal episode." *Murphy*, 107 F.3d at 1208.  An "episode" can include "an incident that is part of a series, but forms a separate unit within the whole.  Although related to the entire course of events, an episode is a punctuated occurrence with a limited duration." *Id.* at 1209. *See also United States v. Thomas*, 211 F.2d 316, 318-19 (6th Cir. 2000).  In determining whether there is a "separate unit within the whole," we look to whether there is a "principled way of distinguishing between the end" of the first

6

offense and the beginning of the second, *see Murphy*, 107 F.3d at 1210, and whether the defendant completed one crime and then "elected to seek out another victim in another location after completing the first." *Id.* (citing *United States v. Wilson*, 27 F.3d 1126, 1131 (6th Cir. 1994)).

Crumb committed five felonies in less than 24 hours in 1996 – three aggravated robberies, one especially aggravated robbery, and one attempted murder in the second degree. He was charged and convicted on all five. At the sentencing hearing in the case before us in this appeal, Crumb testified regarding this string of offenses, explaining that he and two companions decided to go out one night and steal cars in order to strip them and sell their parts. Crumb said that they targeted certain cars because of their make and model and that one of his partners-in-crime knew where these cars would be on the specific night in question. Crumb acknowledged that the cars were occupied when they were stolen, and that he and his cohorts also stole wallets and valuables from the occupants.

During the course of two evidentiary hearings on Crumb's objections to the PSR's recommendation that he be sentenced as an armed career criminal, the court heard the testimony of Major Michael Fuller of the Memphis Police Department, who testified about the circumstances of each robbery. According to Fuller, on February 17, at 11:45 p.m., Crumb and two other men stole a 1989 Toyota Camry, robbing an individual at gunpoint of both his wallet and the car. At about 1:25 the next morning, roughly one hour and 40 minutes after the first robbery, the three men, now riding in a 1989 Toyota Camry, pulled up next to a 1995 Mazda, and got out of the car. One of the men pointed a shotgun at the Mazda's driver, and they robbed him of his wallet and the car.

At about 3:30 that morning, the three men – now in a 1995 Mazda – pulled up beside a Chevrolet Camaro convertible occupied by three young women. One of the men got out of the car

with a shotgun, ordered the women out of the car, and stole it. Finally, at about 9:30 that night, roughly 18 hours after the last robbery, the three men – driving a Chevrolet Camaro convertible – pursued a woman who was driving her car through an apartment complex. As they attempted to rob the woman, one of the men shot her. Crumb was apprehended two days later driving a Chevrolet Camaro. One of Crumb's co-defendants later told police that Crumb was the one who decided to rob the woman. The district court determined that these robberies and the attempted murder were "crimes of opportunity" and were separate criminal "episodes."

The parties stipulated that the last incident – the attempted murder and the especially aggravated robbery of the Camaro's driver – were also one criminal "episode" and should be counted as only one prior felony crime of violence for ACCA purposes. Crumb argued in the district court and argues here that all four robberies were one criminal "episode" for ACCA purposes because they were part of a "common scheme or plan." He contends that they should not count as separate felonies because all of the robberies occurred within a short period of time, all four robberies had a common motive of stripping and selling the parts, all four offenses were all tried together, and the sentences for all four were to run concurrently.

We are not persuaded, and indeed, we think that the circumstances of this case neatly illustrate how the "separate criminal episode" principle works. Each of these robberies involved a different victim and the robberies occurred in different places and at different times. The first, second, and third robberies have distinct starting and ending points and, at the conclusion of each, Crumb and his friends could have stopped hijacking cars and decided enough was enough for that night. Instead, after each of those robberies, they opted to commit a new crime. *See United States v. Brady*, 988 F.2d 664, 669-70 (6th Cir. 1993); *Wilson*, 27 F.3d at 1131. Although the fourth

8

robbery similarly has distinct starting and ending points, and is therefore distinct from the other three, the fourth robbery was accompanied by an attempted murder. The components of these two offenses are not distinct from each other because there exists no principled way to distinguish between the beginning and end of the robbery and the beginning and ending of the attempted murder. *See Graves*, 60 F.3d at 1183 (where defendant committed a burglary and was fleeing when he turned and fired three shots at a pursuing police officer, assault and burglary were one criminal episode); *Murphy*, 107 F.3d at 1208-10 (where defendant and two accomplices entered one half of a duplex and robbed the occupant, and defendant stayed behind in that side to keep the occupant from calling the police while his accomplices robbed the occupant of the other side of the duplex, the two robberies were considered one episode); *Thomas*, 211 F.2d at 321 (where two men took turns raping two women, the rapes were one criminal episode).

Crumb argues that U.S.S.G. § 4A1.2(a)(2) and its Application Note 3 dictate that these offenses must be treated as one episode because they had a common motivation and "were part of a single common scheme or plan." Again, we are not persuaded. Section 4A1.2 is entitled "Definitions and Instructions for Computing Criminal History." That section provides in pertinent part that "[p]rior sentences imposed in related cases are to be treated as one sentence for purposes of § 4A1.1(a), (b), and (c)" (emphasis added), and its Application Note 3 states that "[p]rior sentences are not considered related if they . . . were part of a single common scheme or plan, or . . . were consolidated for trial or sentencing." U.S.S.G. §§ 4A1.1(a), (b) and (c) deal only with calculation of a defendant's criminal history score, and nothing in the terms of those sub-sections makes them applicable to the determination of armed career criminal status, which is governed by U.S.S.G. § 4B1.4. Finally, § 4B1.4(a) provides that "[a] defendant who is subject to an enhanced

9

sentence under the provisions of 18 U.S.C. § 924(e) is an armed career criminal." Nothing in either § 924(e) or § 4B1.4(a) incorporates any definitions from U.S.S.G. § 4A1 or makes reference to "related cases," "related sentences," or offenses that were part of a "common scheme or plan." And nothing in § 924(e) or the case law interpreting it suggests that a common motivation for the crimes is enough to turn otherwise unrelated offenses into related ones for ACCA purposes. The guidelines calculation was proper.[1]

## B.  Remand for Re-Sentencing

Crumb asserts that he was prejudiced because the district court found the "fact and character" of his prior offenses, as well as the fact that he possessed the weapon (for which he was convicted in the instant case) in connection with a crime of violence, by a preponderance of the evidence under a mandatory guidelines scheme, which violated his Sixth Amendment rights. The district court explicitly treated the sentencing guidelines as mandatory, citing our decision in *United States v. Koch*, 383 F.3d 436 (6th Cir. 2004).

First, contrary to Crumb's assertions, the fact and character of his prior offenses is not an element that must be proven beyond a reasonable doubt or that he must admit, even in the context of the ACCA, as judges have historically been free to increase a defendant's sentence based on recidivism. *See United States v. Almendarez-Torres*, 523 U.S. 224, 230 (1998); *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *Blakely v. Washington*, 542 U.S. 296, 301 (2004); *United States*

---

[1]Crumb does not challenge the district court's calculation of his criminal history, and we do not consider it on appeal. We note for the record, however, that U.S.S.G. § 4B1.4(c) requires that the criminal history category of an armed career criminal is to be the greatest of (1) his criminal history as calculated under § 4A, (2) Category VI if the defendant possessed or used the weapon charged in the offense of conviction in connection with a crime of violence or a controlled substance offense, or (3) Category IV. The PSR concluded – understandably, under the facts of this case – that the defendant had used the weapon in connection with a crime of violence, and that the criminal history category must be set at VI. Because this determination is premised on a finding of fact not made by the jury, we will remand for re-sentencing, as we explain hereinafter in Section III.B.

*v. Booker*, 543 U.S. 220, 244 (2005).  Further, we have held that a finding that a particular felony was committed on an occasion different from the commission of another felony is within *Apprendi*'s exception for the "fact of a prior conviction" and is therefore properly made by the court.  *See United States v. Burgin*, 388 F.3d 177, 184 (6th Cir. 2004).

However, in *Booker*, the Supreme Court determined that where the defendant is sentenced under a mandatory guidelines regime and the district court finds facts by a preponderance of the evidence that increase his sentence beyond the statutory maximum, the defendant's Sixth Amendment rights are violated.  The PSR provided for a base offense level of 34, making an implicit finding that Crumb possessed the weapon in connection with a crime of violence, and the district court adopted the PSR's recommendations.  U.S.S.G. § 4B1.4(b)(3)(A).  Because Crumb did not object on Sixth Amendment grounds, we review for plain error, but we have held that imposing the sentence under these circumstances automatically meets the plain error standard.  *Oliver*, 397 F.3d at 378-80.  We will therefore remand the case to the district court for re-sentencing.

## IV.  Conclusion

For the foregoing reasons, we **AFFIRM** Crumb's conviction and **REMAND** the case to the district court for re-sentencing.

11