NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0705n.06

Case No. 10-4555

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jul 03, 2012*

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,            )
                                     )
        Plaintiff-Appellee,          )
                                     )        ON APPEAL FROM THE
        v.                           )        UNITED STATES DISTRICT
                                     )        COURT FOR THE NORTHERN
TONIA M. ANDERSON,                   )        DISTRICT OF OHIO
                                     )
        Defendant-Appellant.         )
                                     )
—————————————————————————            )

BEFORE: BATCHELDER, Chief Judge; McKEAGUE, Circuit Judge; and QUIST, District
Judge.[*]

   ALICE M. BATCHELDER, Chief Judge.   Appellant Tonia Anderson was tried and

convicted on numerous counts of mail fraud, 18 U.S.C. § 1341, making false statements, 18 U.S.C.

§ 1001, and making false statements to receive federal employee compensation, 18 U.S.C. § 1920.

Her appeal raises a number of alleged errors regarding both her conviction and her sentence.  None

of her claims have merit.  We AFFIRM.

**I.**

   Anderson worked for the U.S. Postal Service.  On February 19, 2004, while serving in a

newly assigned role of monitoring her Post Office facility's employee coat room, she struck her knee

against a table at which she was seated.  Four days later, she reported that this incident had injured

_____

[*]Honorable Gordon J. Quist, United States Senior District Judge for the Western District of Michigan,
sitting by designation.

her knee. As result of the injury, she missed almost every day of work until January 2006. Several months after the incident, in November 2004, she had surgery on her knee.

Anderson collected worker's compensation benefits from February 19, 2004, until January 2006. To qualify for the benefits, Anderson submitted an initial form to the Department of Labor describing her injury and her inability to work. The form warned that it was a crime to fraudulently apply for the benefits if she was able to do her job. Anderson then submitted a claim form for each pay period for which she sought benefits, doing this through early January 2006. She also regularly met with her doctor, giving subjective descriptions of her pain and injury. Her doctor relied on these descriptions to fill out worker's compensation eligibility forms for Anderson.

Because her employer was suspicious about the long time Anderson was taking to recover, it had a U.S. Postal Service agent, Mark Montoya, start investigating Anderson in November 2005. He uncovered some glaring inconsistencies. When Agent Montoya interviewed Anderson, she said that she still had extreme knee pain, could not do her own grocery or Christmas shopping, could not lift anything, had difficulty moving around, and took twenty minutes to walk across the Post Office parking lot. But Agent Montoya discreetly observed Anderson shopping for hours at a time, carrying packages that appeared to be heavy with no difficulty or limp, and walking across the parking lot in forty-five seconds—not twenty minutes. He videotaped much of what he observed.

Agent Montoya also conducted a number of "trash pulls" at Anderson's residence and created summaries to record what he recovered. After nothing proved useful to his investigation, he destroyed the recovered materials.

Two agents of the Postal Service Office of Inspector General interviewed Anderson in February 2006 about her condition. Unknown to her, Agent Montoya was listening to the interview. After she gave them the same report about her health that she had given him, Agent Montoya joined the interview and confronted Anderson with what he had seen and videotaped. In response, Anderson basically conceded that she had exaggerated the extent of her disability and admitted that she could have returned to a full, eight-hour workday by August 2005.

Agent Montoya also provided Anderson's doctor a copy of the videotapes. After reviewing them, her doctor confirmed that Anderson's recorded activities were clearly inconsistent with Anderson's statements during their appointments.

The government indicted Anderson for multiple counts of mail fraud, 18 U.S.C. § 1341, making a false statement, 18 U.S.C. § 1001, and making a false statement to receive federal employee compensation, 18 U.S.C. § 1920. A jury found that Anderson defrauded the government of almost $15,000 and convicted her on fourteen out of fifteen counts. A few months later, just before sentencing, the prosecution sent Anderson the reported summaries that Agent Montoya created of his "trash pulls" conducted at Anderson's residence, admitting that the recovered trash itself had been destroyed. The summaries had only just been provided to the prosecution due to an oversight by Agent Montoya. Anderson then moved to dismiss or for a new trial, arguing that the government had violated *Brady v. Maryland*, 373 U.S. 83 (1963). The district court denied Anderson's motion and her subsequent motion for reconsideration.

On appeal, Anderson raises eight claims: (1) that the district court erred in denying Anderson's *Brady*-based motion for a new trial; (2) that her trial counsel rendered ineffective

assistance; (3) that the district court erroneously denied Anderson's motion to disclose grand jury testimony; (4) that the district court erroneously denied Anderson's motion for acquittal based on insufficiency of the evidence; (5) that her conviction should be vacated because it is against the manifest weight of the evidence; (6) that the district court erroneously denied Anderson's request for a downward departure and variance during sentencing; (7) that her sentence is procedurally and substantively unreasonable; and (8) that her trial was fundamentally unfair due to the effect of cumulative error.

We reject each claim in turn below.

## II.

### A.     The *Brady* Claim

Anderson moved the district court for a new trial because the government unilaterally destroyed materials obtained from several "trash pulls" without first providing those materials to Anderson. The district court denied Anderson's motion because Anderson did not show that the "trash pull" evidence was favorable to her or could have been used for impeachment, or that disclosing the evidence would have had any effect on the trial's outcome.

A district court may grant a new trial on the defendant's motion if the interest of justice so requires. Fed. R. Crim. P. 33(a). This Court has been inconsistent about whether abuse of discretion or de novo review is used for denials of motions for a new trial based on *Brady* violations. *United States v. Douglas*, 634 F.3d 852, 860 (6th Cir. 2011). But even under de novo review, Anderson's claim fails.

To establish that this alleged *Brady* violation undermined her conviction, Anderson must show that 1) the evidence from the "trash pulls" is favorable to her because it is either exculpatory or impeaching; 2) the government suppressed the evidence; and 3) prejudice resulted. *See Skinner v. Switzer*, 131 S. Ct. 1289, 1300 (2011). Favorable evidence must be material, which means that there must be a reasonable probability that, had the government disclosed the evidence to the defendant, the result of the proceeding would have been different. *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995). Reasonable probability of a changed outcome is one sufficient to undermine confidence in the outcome. *Id.* (citation omitted). *Brady* does not require the government to disclose information that has a mere possibility of helping the defendant. *United States v. Agurs*, 427 U.S. 97, 109-10 (1976). *Brady* also encompasses evidence known only to investigators and not to the prosecutor. *See Kyles*, 514 U.S. at 437-38.

The government maintains that everything recovered from the "trash pulls" was utterly immaterial and non-exculpatory. The assistant U.S. attorney who informed Anderson about the "trash pulls" stated that "nothing of evidentiary value was acquired as a result of these trash pulls. Nothing recovered in the trash pulls was ever used at trial. . . . [T]he trash pulls did not result in obtaining inculpatory or exculpatory information, and produced no investigative leads. . . . [N]othing contained in the reports was utilized as investigative leads. . . ."

Perhaps understandably, Anderson is not inclined to take the government at its word. But she does not really have to—the materials in question came from *her own trash*. To the extent, then, that her trash contained anything exculpatory, she should be able to provide some idea how it could have been materially favorable to her. Yet she was unable to do so before the district court or this

Court. Indeed, she admits that she cannot do so, conceding that "it is very difficult, if not impossible, to argue that this material is or is not exculpatory without being able to examine the aforesaid destroyed material." Similarly, it is also difficult, if not impossible, to explain why, if Anderson had possessed materials relevant to her claim for benefits, she would have *thrown them away*.

In sum, Anderson's *Brady* claim fails because she failed to meet her burden of showing the evidence was favorable and material.

This failure also disposes of Anderson's related argument that Agent Montoya, who has apparently made similar errors in the past, engaged in misconduct that taints the entire case, thus requiring a new trial. Misconduct alone does not mandate a new trial, and Anderson has failed to show how the sole alleged misconduct—destroying the "trash pull" evidence—in any way materially harmed her. Nor is it clear how it could have harmed her, given the clear objective evidence of her offenses. *United States v. Warshak*, 631 F.3d 266, 300-01 (6th Cir. 2010) ("Given the overwhelming evidence of guilt, a new trial under *Brady* was inappropriate.") (quoting *United States v. Jones*, 399 F.3d 640, 648 (6th Cir. 2005)).

**B.      Ineffective Assistance of Counsel**

Anderson next argues that her trial counsel was ineffective in not moving to suppress Anderson's statements given to the two Inspector General officers who questioned her without Anderson's lawyer present and without a Miranda warning.

Generally, we will not review claims of ineffective assistance of counsel on direct appeal. *United States v. Crosgrove*, 637 F.3d 646, 663 (6th Cir. 2011). An exception exists where the defendant shows that the record is sufficiently developed to support the claim. *Id*.

Anderson "has not provided any substantive argument concerning why the record here is sufficiently developed for us to rule on [her] ineffective-assistance claim on direct review." *United States v. Williams*, 612 F.3d 500, 508-09 (6th Cir. 2010). We accordingly conclude that her claim is premature and must be brought, if at all, in a post-conviction proceeding. *Id.*

## C.     The Grand Jury Transcript

Anderson moved the district court to order the government to disclose certain grand jury transcripts involving Anderson, or at least to review the transcripts *in camera* to determine if Agent Montoya was guilty of perjury. The government responded that it had already disclosed Agent Montoya's entire grand jury testimony to Anderson during trial. The district court denied Anderson's motion because the government already disclosed the relevant grand jury testimony.

This Court reviews a district court's denial of a motion to disclose grand jury materials for abuse of discretion. *United States v. Rutherford*, 509 F.3d 791, 794 (6th Cir. 2007). Here, the district court denied Anderson's motion to obtain the testimony because Anderson already had the testimony. Anderson admits that she has the requested transcripts. The district court did not abuse its discretion by denying Anderson's motion to obtain something she already had.

**D.      Insufficiency of Evidence**

Anderson requested judgments of acquittal on all of her counts after the government rested and at the close of the evidence; she argues that the evidence was insufficient to support her convictions.  The district court denied Anderson's motion for judgment of acquittal.

We review de novo a denial of a motion for judgment of acquittal, affirming the decision if the evidence, viewed most favorably to the government, would allow a rational trier of fact to find the defendant guilty beyond a reasonable doubt.  *United States v. Ramirez*, 635 F.3d 249, 255 (6th Cir. 2011).  The question is merely one of legal sufficiency, so we do not substitute our judgment for that of the jury, independently weigh the evidence, or judge the credibility of trial witnesses.  *Id*. at 255-56.  Circumstantial evidence alone can allow us to sustain a guilty verdict.  *Id*. at 256.  This standard is a great obstacle for defendants to overcome, *id*., and Anderson does not overcome it.

<u>**1. Mail Fraud - 18 U.S.C. § 1341**</u>

Section 1341 "prohibits the use of the mail to execute a scheme to defraud."  *United States v. Martinez*, 588 F.3d 301, 316 (6th Cir. 2009).  To convict, the government must prove beyond a reasonable doubt that the defendant specifically intended to execute a scheme to deceive or defraud, and that she caused the mailing of a letter for the purpose of executing the scheme.  *Id*.; *United States v. Brown*, 147 F.3d 477, 483 (6th Cir. 1998).  A defendant "causes" the mails to be used when she does an act with knowledge that the use of the mails will follow in the ordinary course of business.  *Martinez*, 588 F.3d at 316.

Anderson argues that the government did not prove, first, intent or a scheme to defraud, and, second, the use of mail for the purpose of executing a scheme to defraud.  Anderson's second

argument does not deny that she used the mail system, but only that the use was not with the intent to defraud. Thus, her second argument stands or falls on her first. And her first argument falls.

Anderson argues the government did not prove she devised a scheme to obtain money and property from the U.S. Postal Service from a false claim of disability. The evidence showed, she argues, that she followed proper authority channels and obeyed their directives. She further argues that the government's evidence of her fraud was inconclusive. For instance, she says that videos showing her walking in a mall do not prove that she lied when she said she could not stand for an hour or more.

Dr. Hatherill, Anderson's treating physician, testified to the jury that, after surgery, Anderson went back to light-duty work on February 7, 2005, but stopped on February 18, 2005, because she complained of increasing pain in the knee when standing and walking. Dr. Hatherill testified that she then recommended Anderson not work but exercise at home to strengthen her leg. Throughout 2005, Dr. Hatherill brought up the topic of Anderson going back to work, but Anderson indicated that the pain was severe enough that she could not go back to work yet. Dr. Hatherill testified that she is eager to return patients back to work, and she normally does not dissuade a patient from returning to work unless doing so would harm the patient. Dr. Hatherill's recommendation that Anderson not work was based solely on Anderson's subjective descriptions of her pain; Dr. Hatherill had no objective evidence of Anderson's abilities. By October 2005, Anderson told Dr. Hatherill that she was walking more on her own to try to build up strength, but she still had aggravated knee pain with prolonged standing or walking and thus could not go back to work yet. Throughout this

time period, Dr. Hatherill filled out disability release forms for work. By the end of 2005, Dr. Hatherill recommended that Anderson was fit to go back to limited duty work.

Early in 2006, Agent Montoya showed Dr. Hatherill a video of Anderson walking in stores, getting into and out of her car, and carrying packages. Dr. Hatherill testified that what she saw was inconsistent with Anderson's statements to her during their appointments, and that Anderson's ability was much greater than what she had reported. Dr. Hatherill testified that Anderson was performing normal activities without any limp or apparent discomfort. Agent Montoya testified that when he interviewed Anderson on February 17, 2006, she admitted she could have returned to work in a limited duty capacity for a full eight-hour work-day by August 2005.

A reasonable jury could have credited the government's evidence and reasonably found that Anderson lied about her physical condition in order to collect worker's compensation checks to which she was not entitled. Thus, the evidence for her conviction on this charge is legally sufficient.

### 2. False Statements - 18 U.S.C. §§ 1920, 1001

A defendant violates § 1001 if she knowingly and willfully makes a material statement that is false or fraudulent, and the statement pertains to an activity within the jurisdiction of a federal agency. *See United States v. Siemaszko*, 612 F.3d 450, 462 (6th Cir. 2010). A defendant violates § 1920 if, in an effort to receive federal employee compensation, she knowingly and willingly makes a false, fictitious, or fraudulent statement or representation, or falsifies, conceals, or covers up a material fact. *United States v. Waldren*, 431 F. App'x 374, 376 (6th Cir. 2011) (citing *United States v. Moore*, 29 F. App'x 222, 224 (6th Cir. 2002)).

Anderson makes two arguments against her convictions under §§ 1001 and 1920. First, she argues that the government did not prove beyond a reasonable doubt that she made a false statement or covered up a material fact. Second, she asserts that, even if her statements were false, the government did not prove beyond a reasonable doubt that she made them knowingly and willfully.

Again the evidence viewed in the light most favorable to the government was sufficient to permit a reasonable trier of fact to conclude that Anderson made false statements to Dr. Hatherill about her supposed inability to return to work so that she could get worker's compensation. A trier of fact could also reasonably have concluded that Anderson fraudulently signed the forms she submitted certifying her entitlement to worker's compensation. And a trier of fact could have reasonably concluded that she made the false statements knowingly because she admitted that she knew she could have returned to work at least as of August 2005 but continued to fill out worker's compensation forms and mislead Dr. Hatherill for several months after August 2005. Thus, the jury had sufficient evidence reasonably to conclude that Anderson knew she could have returned to work but falsely claimed she could not.

## E.     Manifest Weight of the Evidence

Anderson asks this Court to vacate the verdict and sentence because it is against the manifest weight of the evidence. But because Anderson did not pursue such a motion at trial, she cannot raise it now. *See United States v. Crumb*, 187 F. App'x 532, 536 (6th Cir. 2006); *United States v. Legette-Bey*, 147 F. App'x 474, 486 (6th Cir. 2005) (defendant never requested a new trial because the verdict was against the manifest weight of the evidence, and thus cannot raise it on appeal).

**F.**     **Sentencing Departure and Variance Requests**

Anderson argues that the district court improperly denied her requested downward departure. There are three fatal problems with this argument. First, as a matter of fact, the district court confirmed at sentencing that Anderson's counsel was seeking a variance, not a departure. Second, we do not review a district court's decision not to depart downward unless the record shows the district court believed it lacked authority to grant a departure, and we presume that the district court understood its discretion to grant a departure unless Anderson proves otherwise by clear evidence. *United States v. Santillana*, 540 F.3d 428, 431 (6th Cir.), *cert. denied Santillana v. United States*, 555 U.S. 975 (2008). She has not done so. Third, the sentencing guidelines section she cites in support of a downward departure, U.S.S.G. § 4A1.3(b)(2), actually *prohibits* a downward departure for those who, like Anderson, are in Criminal History Category I.

Anderson then argues that the district court improperly denied her a variance. But, as noted in more detail below, the district court considered all of Anderson's arguments for a reduced sentence, did not find them persuasive, and properly explained its sentencing decision by reference to the § 3553(a) factors. *Cf. United States v. Grams*, 566 F.3d 638, 686-87 (6th Cir. 2009) (explaining that courts weigh the § 3553(a) factors in ruling on a variance).

**G.**     **Procedural and Substantive Reasonableness of Sentencing**

The district court sentenced Anderson to eight months of home incarceration (monitored by location monitoring technology at the Probation Officer's discretion), allowing Anderson to leave for work, medical, and religious purposes; four years' probation; forty hours of community service; restitution of $14,998.03 recouped at the rate of no less than 10% of Anderson's gross monthly

income; a mandatory special assessment of $1,400.00; and the imposition of certain economic conditions on Anderson, such as giving the Probation Officer access to her financial information and not incurring new credit charges without the Officer's approval. *Id*. at 22-24. Anderson contends the sentence is procedurally and substantively unreasonable because the four-year probationary term and the home confinement elements of her sentence are more than justice requires. We disagree.

We review sentencing decisions for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 46, 49 (2007). Our review is to ensure that the district court made no procedural error in sentencing and that the sentence is substantively reasonable under the totality of circumstances. *Gall*, 552 U.S. at 51. In determining procedural reasonableness, we consider whether the district court correctly calculated the Guideline range, allowed both parties to argue for a particular sentence, considered the 18 U.S.C. § 3553(a) factors, justified any deviation outside the Guideline range, and explained the chosen sentence to allow for meaningful appellate review. *Id.* at 49-50. We also ensure that the district court did not treat the Guidelines as mandatory or select a sentence based on clearly erroneous facts. *Martinez*, 588 F.3d at 324.

The district court's sentencing passes all these considerations with flying colors. It correctly calculated Anderson's offense level, criminal history category, and appropriate Guideline range. The district court allowed both parties to argue for particular sentences, and permitted Anderson's minister and daughter to speak on her behalf. Anderson argued that she should be granted a variance in light of her lack of significant criminal history; strong family ties; a strong employment record; cooperation with the government; the fact that she relied on her physician and supervisors at the U.S. Postal Service and did not duck her responsibility; lack of drugs, violence, or weapons in the offense;

and the collateral effects of her conviction. The government argued that Anderson still did not accept her responsibility for this crime or others she committed earlier, instead choosing to blame others; she had a propensity for fraudulent behavior; she did not lose any wages because she received back pay during the proceeding of the case; and the amount defrauded—almost $15,000—and the crime of fraud are rather serious. The government asked for the Guideline sentence, with restitution of the defrauded funds, but did not take a position on imprisonment as compared to home incarceration.

The district court considered the § 3553(a) factors and found that the offense was serious, that Anderson did not accept responsibility for her crime, that she had a history of making false statements, and that her conduct evinced disrespect for other human beings. The district court treated the Guidelines as non-mandatory. The district court's sentence was not based on any clearly-erroneous facts. Thus, the sentence is procedurally reasonable.

We also find that Anderson's sentence is substantively reasonable. *Gall*, 552 U.S. at 51. A sentence is presumed reasonable if it is within the Guideline range, and the defendant bears the burden of rebutting this presumption. *Martinez*, 588 F.3d at 328. A sentence is unreasonable if it is selected arbitrarily or based on impermissible factors. *Id*. A sentence is also unreasonable where the district court fails to consider pertinent § 3553(a) factors or gives unreasonable weight to any such factor. *Id*.

Anderson's challenge to her sentence's substantive reasonableness wholly relies on her concerns regarding home incarceration and a four-year probation period. Both terms, though, are within the Guidelines. For her case, the Guidelines suggested 8-14 months of imprisonment for an

offense level of 11 and a Criminal History Category of I, and allowed substituting home detention for imprisonment. *See* §5C1.1(c)(3). The district court imposed a sentence at the lowest end of the Guideline range and permitted the eight-month-term to be served at home while allowing Anderson to leave for work, medical, and religious purposes. The district court's sentence of four years' probation was also within the Guidelines' range of 1-5 years. *See* §5B1.1(a)(2); §5B1.2(a)(1). Anderson has not rebutted the presumption that her within-Guidelines sentence is reasonable. Nor has she shown that the district court relied on impermissible factors, gave any factor undue weight, or failed to consider pertinent factors. To the contrary, the record shows that the district court considered the nature of the offense, Anderson's criminal history and characteristics, the need to promote Anderson's respect for the law, the need to provide restitution, and the kinds of sentences available. Thus, the district court gave Anderson a substantively reasonable sentence and did not abuse its discretion in the slightest.

## H.     Cumulative Error

Anderson argues that even if none of the other alleged errors constitute reversible error, their cumulative effect violated her due process right by rendering her trial fundamentally unfair. But cumulative error analysis only applies to errors, not non-errors. *See United States v. Trujillo*, 376 F.3d 593, 614 (6th Cir. 2004). Because the district court committed no error, cumulative error analysis is inapplicable.

## III.

We **AFFIRM** Anderson's conviction and sentence.