NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0273n.06
Filed: May 19, 2008

No. 07-5019

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF KENTUCKY |
| | ) | |
| CHARLES RAY WISE, | ) | O P I N I O N |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: MOORE and McKEAGUE, Circuit Judges; SCHWARZER, District Judge.[1]

**McKEAGUE, Circuit Judge.** In October 2006, a jury convicted defendant Charles Ray Wise on four of six counts charged in the superseding indictment[2] ("Indictment"), stemming from his romantic relationship with a 14-year-old female in late 2005 and early 2006. The district court subsequently sentenced Wise to 360 months' imprisonment. On appeal, Wise argues the district court improperly denied his motions for acquittal and erred in a litany of ways with respect to the imposition of his sentence.

---

[1]The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

[2]The superseding indictment simply changed the dates on which the acts allegedly occurred in two of the charged counts.

Upon review of the record and applicable law, we find that sufficient evidence existed for a reasonable juror to have concluded that Wise committed all the crimes of conviction and the district court did not err when it sentenced Wise. Accordingly, we AFFIRM.

## BACKGROUND

In October 2005, the victim met defendant Wise in an internet chatroom. The victim was then a 14-year-old female from Jonesboro, Arkansas and Wise was a 37-year-old male from Winchester, Kentucky. The victim's internet profile listed her age as 18-years-old, and she admitted that she pretended she was older than she was when she first communicated with Wise. However, by mid-November 2005, the victim had told Wise her true age.

After their initial meeting on the internet and despite the victim's age, a relationship ensued between the victim and Wise. For months, the two exchanged romantic e-mails and telephone calls. During this time, they also engaged in telephone sex and exchanged sexually explicit pictures of each other.

In early December 2005, the victim's mother began to notice some personality changes in her daughter and at the same time, she noticed a lot of telephone calls to and from Winchester, Kentucky on her cellular telephone bill. When she asked her daughter about the telephone activity, she told her she had met some children on the internet. Shortly thereafter, the victim's mother called one of the telephone numbers and reached Wise. She proceeded to tell him that her daughter was 14-years-old and asked Wise to put a stop to his children calling her daughter.

On December 31, 2005, unbeknownst to the victim's family, Wise made his first of three trips from Kentucky to Arkansas. On this first visit, Wise brought the victim gifts to a prearranged

location near the victim's home, including an iPod and a cellular telephone, but he did not actually meet the victim in person.

On January 1, 2006, the victim's mother went to the Jonesboro, Arkansas police department to report the situation about her daughter. After the victim's mother provided her telephone bill to police, the officer called one of the listed numbers believed to be associated with Wise. Wise told the officer that his minor daughter had been communicating with the victim via the telephone and internet and that he recently learned his daughter had sent two cellular telephones to the victim. The officer told Wise that the victim was a minor.

The next day, the victim's mother returned to the police department to provide them with an express mail package that Wise sent to her daughter at her friend's address. Inside the package, a note addressed to the victim read "I love you more than ever, and I will be here for you. Please call me. I am waiting." The note was dated November 26, 2005, 6:30 a.m.

The officers requested that the victim's mother bring her daughter to the police department the following day for an interview. During the interview, the victim claimed she had been corresponding with a girl named Randi, a 10-year-old, that she met on the internet.

On January 6, 2006, Wise contacted the Jonesboro police department and asked an officer to return the telephones to him. The officer informed Wise that the telephones would not be released until the investigation was complete. The officer told Wise that he believed Wise, or another adult with access to the telephones, *not* his daughter, mailed them to the victim. Wise stated his knowledge to the officer that the victim was 14-years-old.

Over the weekend of January 13, 2006, unbeknownst to the victim's family or police, Wise visited Arkansas a second time. On this visit, Wise brought his minor son with him, and he also rented a car for the trip rather than drive his own vehicle. On his first night in Arkansas, he met the victim in the woods near her grandmother's house where she was staying. Wise fondled the victim's breasts and genitals in the car while his minor son slept in the back seat. Later that same evening, Wise brought the victim to a nearby hotel room where they engaged in sexual activity, and he gave her a promise ring and $150 in cash. The following night, Wise picked up the victim again at her grandmother's house. They went straight to the hotel and proceeded to engage in sexual contact.

On January 20, 2006, again without the victim's family or police knowing, Wise made his third trip to Arkansas. On this visit, Wise picked up the victim outside her grandmother's house and then drove her to Kentucky. The two arrived the next morning at the Kentucky house of Wise's friend and employee, Clarence Daniel Dunn. During the trip, the victim performed oral sex on Wise. Upon Wise's request later that same day, Dunn moved the victim to a hotel in Mount Sterling, Kentucky. During the victim's stay in the hotel, Wise visited the victim and engaged in sexual conduct with her, including fondling, oral sex, and anal sex. On those occasions, he often brought his minor son with him to the hotel.

On January 21, 2006, the victim's mother reported to police that her daughter, who had been staying with her grandmother at the time, had left her grandmother's home. That same day, Jonesboro police contacted the Winchester, Kentucky police department to advise them that the victim may be in their jurisdiction with Wise. A Winchester police officer then located and

- 4 -

questioned Wise about the victim's whereabouts, and he denied having any knowledge of her location.

After police continued to gather more information about the relationship between Wise and the victim, Winchester police again interviewed Wise. Wise stated all cellular telephones belonging to him were in his possession and that no one in his family had been in contact with the victim in the previous two weeks.

On January 24, 2006, FBI agents met with Wise. He repeatedly denied any knowledge of the victim's whereabouts, denied any relationship with her, and maintained instead that his children had an ongoing relationship with her.

On that same day, FBI agents interviewed Wise's 9-year-old daughter regarding her knowledge of the victim and her whereabouts. She stated she met the victim in an internet chatroom and she detailed her various alleged communications with her. The same day, the agents conducted a shorter interview with Wise's 12-year-old son. He reported that his sister met the victim in a chatroom.

Later that day, agents interviewed Dunn. Dunn explained that three to four months ago, Wise advised him that he had met a female with the victim's name over the internet. Approximately one month ago, Wise told him he was in love with the victim, who he said was 24-years-old. And, approximately one week ago, Wise told Dunn that she was only 14-years-old. He stated that Wise had recently visited the victim. He said that Wise brought the victim to Dunn's house on Saturday, January 21, 2006 at 7:30 a.m. and stayed for approximately four to five hours. Upon Wise's request,

Dunn drove the victim to a motel in Mount Sterling, Kentucky. The only other time Dunn said he saw the victim was when he took her to breakfast that morning.

Agents again interviewed Wise. Wise finally admitted that he had lied to the agents about his knowledge of the victim's whereabouts. Eventually, he admitted that she was at a motel in Mount Sterling, Kentucky.

Agents and officers were dispatched to the hotel. The victim was located and taken into the protection of the FBI. She was later transported to a hospital, where she underwent a sexual assault examination. Evidence was collected from the rented hotel room, including a used towel, tissues, two sheets, and two blankets. Two areas tested positive for the presence of bodily fluids and DNA testing matched both Wise and the victim. As part of their investigation, agents later found images of minors engaged in sexually explicit conduct on Wise's computer, including some of the victim's vagina.

A jury later convicted Wise on four of six counts in the Indictment, including: (1) count three - traveling in interstate commerce from Kentucky to Arkansas for the purpose of engaging in illicit sexual conduct with a 14-year-old female; (2) count four - transporting a 14-year-old female from Arkansas to Kentucky with the intent to engage in sexual activity for which any person could be charged with a criminal offense; (3) count five - possessing one or more matters containing a visual depiction, involving the use of a minor engaged in sexually explicit conduct; and (4) count six - making a false, fictitious or fraudulent statement of material fact or representation to a Special Agent of the Federal Bureau of Investigation ("FBI"). The district court subsequently departed upward

from the applicable Sentencing Guidelines range and sentenced Wise to 360 months' imprisonment. This timely appeal followed.

**ANALYSIS**

**A. Sufficiency of the Evidence**

On appeal, Wise argues that the district court erred when it denied his motion for acquittal on all counts, both at the close of the government's evidence and again at the close of his case. The standard of review for Wise's challenge as to the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See United States v. Davis*, 473 F.3d 680, 681 (6th Cir. 2007) (internal quotation marks and citations omitted). For purposes of clarity, the sufficiency of evidence as to each count of conviction is discussed separately below.

**1. *Count three***

For Wise to have been found guilty under 18 U.S.C. § 2423(b), the Government was required to prove that: (1) Wise traveled in interstate commerce; (2) his purpose was to engage in illicit sexual activity with a minor (person less than 18 years of age); and (3) the intended sexual act would have been in violation of federal law had it been committed. *See* 18 U.S.C. § 2423(b); *see also United States v. Oliver*, 32 F. App'x 806, 808 (9th Cir. 2002).

It appears that Wise's main arguments with respect to the sufficiency of the evidence is that the victim lied to her parents and law enforcement, and that the victim was a willing participant in the relationship with Wise. Foremost, it is not the role of this court to assess the credibility of a

witness when evaluating a sufficiency of the evidence challenge. *See United States v. Crumb*, 187 F. App'x 532, 536 (6th Cir. 2006) ("In assessing the merits of such a challenge, we may not weigh the evidence, assess the credibility of the witnesses who testified, or substitute our judgment for the jury's."). Moreover, the victim's alleged consent to the relationship is of no consequence to our decision. *Cf. United States v. Wilcox*, 150 F. App'x 458, 461 (6th Cir. 2005) (stating that "a minor can't give legal consent to sexual intercourse"); *see also United States v. Abad*, 350 F.3d 793, 798 (8th Cir. 2003) ("When sexual assaults are committed upon children . . . , consent is not a defense. The reason is that the victims in these cases, because of ignorance or deceit, do not understand what is happening to them. Therefore their 'consent' is of no significance.")(internal quotation marks and citation omitted).

First, there was sufficient evidence that Wise traveled in interstate commerce, including: (1) testimony regarding him renting a car from January 13 through January 16 and related paperwork that confirmed said car would be used to travel through Kentucky, Tennessee, and Arkansas; (2) testimony regarding Wise staying at a hotel in Arkansas from January 14 through January 16 and hotel security video that confirmed his stay in the hotel; (3) the victim's testimony that she met and engaged in sexual activity with Wise when he traveled to Arkansas; (4) testimony that Wise told Dunn that he traveled to Arkansas, stayed in a motel there, and played "spin the bottle" with the victim, J.A. 133-34; and (5) Wise's own trial testimony that he went to Arkansas on January 14, 2006.

Second, there was sufficient evidence that Wise's purpose for his travel to Arkansas was to engage in illicit sexual activity with a minor, including: (1) the victim's testimony that she was 14-

years-old at the time Wise traveled to Arkansas and that she had been engaged in a romantic relationship with Wise for some time before his visit; (2) the victim's testimony that she told Wise months prior to his visit to Arkansas that she was only 14-years-old, and in a November 15, 2005 e-mail she wrote to him stating "I'm sorry, Charles, for lying to you about my age . . .", J.A. 156-60; (3) the victim's mother's testimony that she told Wise that her daughter was only 14-years-old prior to his visit to Arkansas; (4) a police officer's testimony that the officer informed Wise that the victim was a minor; and (5) another police officer's testimony that the officer specifically informed Wise that the victim was 14-years-old. Not only was there sufficient evidence that Wise knew the victim was a minor, but there was also sufficient evidence that his purpose was to engage in illegal sexual activity with her, including that: (1) prior to Wise's visit to Arkansas they engaged in telephone sex and exchanged sexually explicit pictures of each other and (2) shortly after Wise's arrival in Arkansas they did, in fact, engage in sexual activity.

Third, there was sufficient evidence that the intended sexual act would have been in violation of federal law had it been committed. Here, Wise traveled to Arkansas to knowingly engage in sexual acts with the 14-year-old victim, when he was approximately 37-years-old, making any sexual acts between the two of them in violation of federal law. *See* 18 U.S.C. § 2243(a).

Ample evidence supports that a rational trier of fact could have found all three elements beyond a reasonable doubt. Accordingly, we find that sufficient evidence existed as to count three.

### 2. *Count four*

For Wise to have been found guilty under 18 U.S.C. § 2423(a), the Government was required to prove that Wise: (1) knowingly transported a minor across state lines and (2) did so with the intent

to engage in sexual activity with the minor for which any person could be charged with a crime. *See* 18 U.S.C. § 2423(a); *see also United States v. Chambers*, 441 F.3d 438, 450 (6th Cir. 2006).

First, there was sufficient evidence that he knowingly transported a minor across state lines, including: (1) the victim's testimony that Wise traveled to Arkansas on January 20, 2006 by car to pick her up and then took her back to Kentucky; (2) Dunn's testimony that Wise told him he was going to get the victim in Arkansas and then Wise showed up with the victim the next morning at Dunn's residence in Kentucky; and (3) Wise's own trial testimony that he picked the victim up in Arkansas and brought her back to Kentucky.

Second, there was sufficient evidence that he transported her with the intent to engage in sexual activity with her, including the victim's testimony that prior to her arrival in Kentucky: (1) they engaged in telephone sex and exchanged sexually explicit pictures of each other; (2) they had, in fact, engaged in sexual activity on prior occasions, including during his prior visit to Arkansas to see her; and (3) they had discussed her coming to live with Wise and marriage. The victim also testified that she performed oral sex on Wise during the trip from Arkansas to Kentucky and that Wise visited her hotel room in Kentucky multiple times to engage in sexual activity, including fondling, oral sex, and anal sex. In addition, DNA evidence confirmed that a mixture of Wise's and the victim's DNA was found on items seized from the hotel room. There also was evidence that Wise conducted internet searches on his computer about teen marriage laws, the legal age to live with someone, information regarding power of attorney, and the legal age for sex.

There also was sufficient evidence to show that the victim was under 18-years-old. As discussed *supra*, the victim testified she was 14-years-old at the time of the incidents at issue here.

Wise also knew the victim was 14-years-old when he visited her in Arkansas on a prior occasion and therefore he also knew her age when he subsequently transported her from Arkansas to Kentucky. Lastly, there was sufficient evidence that Wise's conduct would be a criminal offense. *See* Kentucky Revised Statute § 510.090.

A voluminous amount of evidence supports that a rational trier of fact could have found the elements beyond a reasonable doubt. Accordingly, we find that sufficient evidence existed as to count four.

### 3. *Count five*

For Wise to have been found guilty under 18 U.S.C. § 2252(a)(4)(B), the Government was required to prove that Wise: (1) knowingly possessed electronic storage media which contained a visual depiction of a minor engaged in sexually explicit conduct and (2) that the visual depictions had been either mailed, shipped or transported in interstate commerce or were produced using material that had been mailed, shipped or transported in interstate or foreign commerce. *See* 18 U.S.C. § 2252(a)(4)(B); *see also Chambers*, 441 F.3d at 451.

First, there was sufficient evidence that Wise knowingly possessed a computer hard drive that contained visual depictions of a minor engaged in sexually explicit conduct, including: (1) the victim's testimony that she took sexually explicit pictures of herself and sent them to Wise upon his request; (2) both images of the victim's vagina found on Wise's hard drive had been sent from Wise's cellular telephone to his e-mail address; (3) forensic testimony and evidence that Wise transferred the images from his cellular telephone to his e-mail account and said images were located on his computer hard drive; and (4) Dunn's testimony that he saw pictures of the victim on Wise's

- 11 -

computer, including a picture of her vagina, saw Wise delete those pictures, and Wise told Dunn that he wanted to delete them in case the FBI got involved. Wise also knew the victim was 14-years-old and therefore a minor prior to the seizure of Wise's computer on January 24, 2006.

Second, there was sufficient evidence that the visual depictions had been either mailed, shipped or transported in interstate commerce, including the victim's testimony that she took the sexually explicit pictures in Arkansas and sent them via cellular telephone to Wise in Kentucky. *See* J.A. 165-75; *cf. United States v. Clayton*, 108 F.3d 1114, 1117 (9th Cir. 1997) ("Telephones are instrumentalities of interstate commerce."); *United States v. Mitra*, 405 F.3d 492, 496 (7th Cir. 2005) (stating "cell-phone calls . . . are part of interstate commerce").

The evidence supports that a rational trier of fact could have found the elements beyond a reasonable doubt. Accordingly, we find that sufficient evidence existed as to count five.

**4. *Count six***

For Wise to have been found guilty under 18 U.S.C. § 1001(a)(2), the Government was required to prove that Wise: (1) knowingly and intentionally made false and fictitious statements to FBI agents; (2) said statements were material; and (3) said statements were made with the purpose of misleading FBI agents. *See* 18 U.S.C. § 1001(a); *see also United States v. Grenier*, 513 F.3d 632, 636 (6th Cir. 2008).

There was sufficient evidence that Wise made several knowingly and intentionally false and fictitious statements to FBI agents, including Special Agent Kacey Gabriel's testimony that Wise falsely stated to her during interviews that: (1) he had no knowledge about the victim's whereabouts; (2) he had no involvement with the victim's disappearance; (3) he did not have a relationship with

the victim; (4) he only knew the victim because his children had been communicating with her; (5) he had not given the victim any gifts; (6) no one in his family had been in contact with the victim in several weeks; (7) he needed to leave the interview because he had to unlock a vehicle for someone in his capacity as the town's only locksmith; (8) it was not his voice on a message in which he stated he loved the victim; and (9) even after explaining that the victim was safe, he stated she was in Clay City or Winchester, Kentucky before finally admitting that he knew she was in a hotel in Sterling, Kentucky. Based on the nature of the abovementioned false and fictitious statements, a rational juror also could have concluded that such statements both were material and made to mislead the FBI in their investigation.

In his brief on appeal, Wise does not argue to the contrary and his own trial testimony largely confirms his many lies to the agents. Indeed, the evidence shows that a rational trier of fact could have found the elements beyond a reasonable doubt. Accordingly, we find that sufficient evidence existed as to count six.

## B. Sentencing Objections

On appeal, Wise objects to the Sentencing Guidelines calculation that the district court employed to impose his sentence. We review a district court's findings of fact for purposes of its Sentencing Guidelines calculation for clear error, and interpretations of the Sentencing Guidelines *de novo*. *See United States v. Galloway*, 439 F.3d 320, 322 (6th Cir. 2006).

### 1. *U.S.S.G. § 3B1.4 enhancement*

Wise first objects to a two-level enhancement pursuant to U.S.S.G. § 3B1.4 for using a minor to facilitate a crime. This enhancement was applied to two counts of conviction, including (1) count

- 13 -

three - travel in interstate commerce for the purpose of engaging in sexually explicit conduct with a minor and (2) count four - transporting of a minor with the intent that the minor engage in sexual activity.

In short, Wise argues that the enhancement was improper here because he did not actively involve his children in committing or covering up the offenses in counts three and four, rather he simply blamed his children for the offenses. His argument fails.

While Wise is correct that the enhancement should only apply when a defendant takes affirmative acts to involve a minor, he is wrong to suggest that his acts were not sufficient. *See United States v. Butler*, 207 F.3d 839, 846-49 (6th Cir. 2000). Here, the government presented evidence that Wise actively involved his minor children in attempting to avoid detection of and apprehension for the offenses in counts three and four and the district court properly relied on that evidence in applying the enhancement. First, when the victim was missing, the FBI interviewed Wise's 9-year-old daughter about the victim's whereabouts. His daughter proceeded to tell the FBI agents an elaborate story about meeting the victim in an internet chatroom, using her father's screen name, and sending pictures of her father and cellular telephones to the victim. Indeed, that Wise's young daughter told the FBI agents a story that so closely paralleled the untruthful story Wise himself provided to authorities is strong evidence that he used her to avoid detection of or apprehension for the offenses. The same can be said with respect to the use of Wise's 12-year-old son. Wise's son accompanied him on more than one occasion when Wise engaged in sexual activity with the victim. Because his son was close in age to the victim, he may have used him as a means to avoid detection by suggesting (if needed) that he was bringing his son to meet the victim, and his

son's presence might have been a way to make the victim feel less threatened. Moreover, while the victim was missing, the FBI also interviewed Wise's son and his story mirrored that of his sister's and father's untruthful story.

Contrary to Wise's suggestion, that his children might not have had knowledge of what he was doing is of no consequence to whether the enhancement should be imposed. *See United States v. Jenkins*, 229 F. App'x 362, 369 (6th Cir. 2005) ("USSG § 3B1.4 . . . does not impose a knowledge requirement on the minor who is used in the commission of the offense.") (internal quotation and citations omitted). Accordingly, the district court did not err with respect to this enhancement.

### 2. *U.S.S.G. § 2G1.3(b)(2)(B) enhancement*

Next, Wise objects to a two-level enhancement pursuant to U.S.S.G. § 2G1.3(b)(2)(B) for unduly influencing a minor. This enhancement was applied to two counts of conviction, including (1) count three - travel in interstate commerce for the purpose of engaging in sexually explicit conduct with a minor and (2) count four - transporting of a minor with the intent that the minor engage in sexual activity. Wise argues that the enhancement does not apply because "the alleged sexual contact was not forceable." *See* Appellant's Br. 29. His argument fails.

The plain language of the enhancement does not require forceable contact. Moreover, a minor cannot legally consent to sexual intercourse. *See Wilcox*, 150 F. App'x at 461. The enhancement requires that "the court should closely consider the facts of the case to determine whether a participant's influence over the minor compromised the voluntariness of the minor's behavior." U.S.S.G. § 2G1.3(b)(2)(B), cmt. 3(B). Wise misconstrues this note's reference to

voluntariness of the minor's behavior when he argues that forced contact is required. That is flatly not the intent of the enhancement or the application notes.

Here, Wise was approximately 23 years older than the victim at the time of their illegal interactions and therefore a rebuttable presumption existed that he unduly influenced the victim. *See* U.S.S.G. § 2G1.3(b)(2)(B), cmt. 3(B). Wise fails to cite any evidence to rebut the presumption. Moreover, there was ample evidence to support undue influence apart from the presumption. Wise gave the victim expensive gifts, including cellular telephones, an iPod, a promise ring, and money to entice her. He paid for the victim's stay in hotels, as well as provided her clothes and meals to facilitate their sexual encounters. He also drove to her house to pick her up on more than one occasion, including driving her to both a nearby and out of state hotel to engage in sexual contact with her. The victim testified that Wise requested she send him sexually explicit pictures of herself and that he told her that engaging in anal sex was not "real sex" such that she would not get pregnant or contract any sexually transmitted diseases. J.A. 199. He also emphasized to the victim that he was a former police officer. Moreover, the vast majority of these inducements, if not all, occurred *after* Wise knew the victim was 14-years-old. Defense counsel's suggestion at oral argument to the contrary is not well taken.

Wise also argues that application of the enhancement amounts to impermissible double-counting. This argument similarly fails. "[W]e adhere in this case to our well-established rule that impermissible 'double counting' occurs when precisely the same aspect of a defendant's conduct factors into his sentence in two separate ways." *United States v. Farrow*, 198 F.3d 179, 193 (6th Cir. 1999). Wise's conduct of unduly influencing the victim is not an element of the offenses in counts

- 16 -

three or four to which it was applied. Nor is it factored into his sentence in those offenses in two separate ways. Indeed, one can be found guilty of both offenses without a showing of undue influence. Accordingly, it cannot be said that the district court erred in applying this enhancement.

### 3. *U.S.S.G. § 2G2.1(b)(1)(B) enhancement*

Wise next objects to a two-level enhancement pursuant to U.S.S.G. **§** 2G2.1(b)(1)(B) based on the victim's age. This enhancement was applied to count five - possessing one or more matters containing a visual depiction, involving the use of a minor engaged in sexually explicit conduct. He argues that because the offense necessarily involves the use of a minor such an enhancement is double-counting.

While Wise is correct that the offense in count five requires a minor (which is defined as any person under 18-years-old), the enhancement only applies if the minor is at least 12-years-old but under 16-years-old. *See* U.S.S.G. **§** 2G2.1(b)(1)(B). Therefore, the victim's specific age is not factored into the sentence in two separate ways and therefore it is not impermissible double-counting to apply the enhancement here. *Cf. United States v. First*, 226 F. App'x 576, 579-80 (6th Cir. 2007) (finding that a four-level enhancement for the victim having not attained age 12 pursuant to U.S.S.G. § 2A3.1(b)(2)(A) did not constitute impermissible double-counting because the "base offense level applies to a range of crimes where the victim is not necessarily under the age of 12"). Accordingly, the district court did not err in applying this enhancement.

### 4. *U.S.S.G. § 2G1.3(b)(4)(A) enhancement*

Wise also objects to the application of a two-level enhancement pursuant U.S.S.G. § 2G1.3(b)(4)(A) for the commission of a sex act or sexual contact because he argues it amounts to

impermissible double-counting. This enhancement was applied to two counts of conviction, including (1) count three - traveling in interstate commerce for the purpose of engaging in sexually explicit conduct with a minor and (2) count four - transporting of a minor with the intent that the minor engage in sexual activity. The offenses in counts three and four are complete once the defendant travels across state lines or transports the victim across state lines with the requisite purpose or intent, while the enhancement applies when the defendant not only intends but *does* engage in sexual conduct with the minor. To be found guilty of the offenses in counts three or four, it is not a necessary element that sexual contact with the minor actually occur. Therefore, the fact that Wise did engage in sexual conduct with the victim here is not factored into his sentence in two separate ways. Accordingly, the district court did not err in applying this enhancement.

### 5. *U.S.S.G. § 2G2.1(b)(6)(B)(i) enhancement*

Wise next objects to a two-level enhancement pursuant to U.S.S.G. § 2G2.1(b)(6)(B)(i) for the use of a computer. This enhancement was applied to count five - possessing one or more matters containing a visual depiction, involving the use of a minor engaged in sexually explicit conduct. Wise argues that it amounts to impermissible double-counting because the use of a computer is required as part of both the substantive offense in count five and the enhancement.

To the contrary, the offense at issue in count five does not require the presence of a computer, rather a media storage device of any kind. *See* 18 U.S.C. § 2252(a)(4)(B). In addition, the district court appropriately explained that Wise not only stored images on his computer as the offense conduct addresses but he also used his computer to "persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in sexually explicit conduct, or to otherwise solicit participation by

- 18 -

a minor in such conduct" as addressed in the enhancement. U.S.S.G. § 2G2.1(b)(6)(B)(i); J.A. 237-38. Therefore, Wise's use of a computer in such a capacity is not factored into his sentence in two separate ways and is not impermissible double-counting. Accordingly, the district court did not err in applying this enhancement.

### 6. *U.S.S.G. § 3C1.1 enhancement*

Wise also argues that the application of a two-level enhancement pursuant to U.S.S.G. § 3C1.1 was impermissible double-counting inasmuch as he separately was convicted of making false statements to an agent, in violation of 18 U.S.C. § 1001. This enhancement was not applied to count six that involved making false statements, rather it was applied to the other three counts of conviction. We have rejected a double-counting argument in a factually similar case. *See United States v. Moon*, 513 F.3d 527, 542 (6th Cir. 2008). We explained that "[w]hile Defendant correctly notes that impermissible double counting occurs where a defendant's conduct factors into her sentence in two separate ways, the rule applies with respect [to] our evaluation of a single count." *Id.* Moreover, the district court here appropriately explained that:

> It is clear from the testimony at trial and the presentence report that the defendant's obstruction went beyond just making false statements to the authorities. For example, Mr. Wise repeatedly lied to the victim's mother when she contacted him, he hid the victim in a motel room and enlisted others to assist him, had his children lie to the authorities for him, and committed perjury on the stand when he lied about his relationship with the victim.

J.A. 236. Accordingly, the district court did not engage in impermissible double-counting when it applied this enhancement.

### 7. *Reasonableness*

- 19 -

To the extent Wise's argument can be construed as a reasonableness one, that argument similarly fails. "We review the reasonableness of a sentence using the abuse-of-discretion standard of review." *United States v. Phinazee,* 515 F.3d 511, 514 (6th Cir. 2008) (citing *Gall v. United States*, --- U.S. ----, 128 S. Ct. 586, 594, 169 L. Ed. 2d 445 (2007)). "[T]he fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Id.* (citation omitted).

Indeed, "our reasonableness review is two-fold, requiring that a sentence be both procedurally and substantively reasonable." *Id.* (citation omitted). We have explained that:

> A sentence may be procedurally unreasonable if the district court "did not appreciate the non-mandatory nature of the guidelines, did not correctly calculate the sentencing range under the guidelines, or did not consider the § 3553(a) factors." (citations omitted).

*Id*. With respect to procedural unreasonableness, Wise does not allege that the district court failed to appreciate the non-mandatory nature of the Sentencing Guidelines and such an argument would fail in any event because the district court chose a sentence outside the Sentencing Guideline range. Wise also does not allege that the district court did not consider the § 3553(a) factors. Rather, his procedural attacks on the sentence relate to whether the district court correctly calculated the Sentencing Guidelines range and, as discussed *supra*, we reject all of those challenges.

In the end, Wise's remaining objection to his sentence amounts to an argument that it was substantively unreasonable because the upward departure was unwarranted. Here, Wise's total offense level was a 38, and with a criminal history category of I, his total Sentencing Guidelines range was 235 to 293 months' imprisonment. The district court departed upward and sentenced Wise to 360 months' imprisonment.

"[A] sentence may be substantively unreasonable when the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor." *Id.* (*citing United States v. Borho*, 485 F.3d 904, 908 (6th Cir. 2007)) (alterations in original) (citation and quotation marks omitted). To the contrary, here, there was plenty of evidence to support the district court's upward departure.[3] J.A. 261-65. The district court specifically noted several factors that influenced its decision, including that: (1) the victim suffered physical injury when she contracted herpes simplex virus II, a sexually transmitted disease that is incurable; (2) the victim suffered serious psychological injury, as evidenced by inpatient and ongoing mental health treatment and a diagnosis of post-traumatic stress disorder; and (3) Wise's actions were egregious, including that he kept the victim in a hotel room for four days repeatedly subjecting her to various sexual contacts, while taking overt steps to keep her location a secret. The district court explained that:

> [3]We previously have explained the difference between a departure and a variance.
>
> A district court may impose a sentence outside of the applicable Guidelines range through a Guidelines or non-Guidelines departure. "Our court has previously explained that departures based on Chapter 5 of the Guidelines should be referred to as 'Guideline departures,' and that 'sentences lower than the Guidelines recommendation based on section 3553(a) factors' can be referred to as 'Non-Guideline departures.' " *United States v. Jones*, 445 F.3d 865, 872 n. 1 (6th Cir.2006) (Moore, J., dissenting) (quoting *United States v. McBride,* 434 F.3d 470, 477 n. 5 (6th Cir.2006)). We often refer to Non-Guideline departures as "variances." *See id.; United States v. Matheny*, 450 F.3d 633, 640 n. 4 (6th Cir.2006).

*United States v. Cousins*, 469 F.3d 572, 577 (6th Cir. 2006). While it would be helpful on appellate review if the district court would articulate whether it was departing or varying, it is of no consequence in this case because we review both actions for reasonableness. *See* J.A. 263 ("So the Court will depart upward or vary upward, depending on how you want to look at it."). In any event, here, it would not alter our conclusion whether we characterize the district court's actions as an upward departure or a variance because the sentence is not unreasonable.

- 21 -

> So considering all of these facts, considering the fact that the behavior is so reprehensible that the Sentencing Commission, in my opinion, would never have considered the total factual situation that is involved in this case, an upward departure is appropriate.

J.A. 263. All of these factors touched upon the provisions also listed in the presentence report ("PSR") as support for an upward departure, including: (1) in the case of child crimes and sexual offenses there exists an aggravating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission, pursuant to U.S.S.G. § 5K2.0(a)(1)(B); (2) when the victim suffered significant physical or extreme psychological injury, as described by U.S.S.G. §§ 5K2.2, 5K2.3; and (3) when defendant's conduct is extreme, as provided by U.S.S.G. §5K2.8.

> The district court also explained its prudent weighing of the 18 U.S.C. § 3553(a) factors:

> I have considered the advisory guidelines. I have considered the sentencing factors set out in 18, United States Code, Section 3553(a). I have considered the presentence report. I have considered, Mr. Stephens, your filings. And, I'm looking to impose a sentence which is sufficient but not greater than necessary to comply with the purposes set out in 3553(a). And I look at, number one, the nature and circumstances of the offense, the characteristics of the defendant. I have nothing to say about the characteristics of the defendant prior to what happened here. When I look at the nature and circumstances of the offense, I find it to be reprehensible, I find the conduct of the defendant to be reprehensible. This is one of the most serious offenses I've seen since I've been on the bench. I think a long sentence is necessary to promote respect for the law, it is necessary to promote justice, and it is necessary to afford adequate deterrence to criminal conduct.

J.A. 264.

To the extent Wise also argues the district court improperly considered evidence that the victim contracted a sexually transmitted disease from Wise because that evidence was not subjected to cross-examination or to a jury finding, that argument similarly fails. We have explained that "[s]ince *Booker*, we have reaffirmed the doctrine that district judges in determining defendants'

sentences may consider facts that they find under a preponderance-of-the-evidence standard." *United States v. Klups,* 514 F.3d 532, 537-38 (6th Cir. 2008) (holding that "judge could have found the existence of ongoing abuse by a preponderance of the evidence and, accordingly, could have validly taken this conduct into account as a justification for the variance"); *see also Rita v. United States,* 127 S. Ct. 2456, 2465-66 (2007) ("[E]ven if it increases the likelihood that the judge, not the jury, will find "sentencing facts," [it] does not violate the Sixth Amendment. This Court's Sixth Amendment cases do not automatically forbid a sentencing court to take account of factual matters not determined by a jury and to increase the sentence in consequence."). Here, the district court appropriately found that the victim contracted a sexually transmitted disease from Wise by a preponderance of the evidence.

In short, "[w]hile defendant [Wise's] sentence was lengthy, he has not established that the sentence was unreasonable." *United States v. Ward*, 506 F.3d 468, 478 (6th Cir. 2007).

## CONCLUSION

For all the aforementioned reasons, we AFFIRM both the district court's denial of the defendant's motion for acquittal and the defendant's sentence as imposed.