NOT RECOMMENDED FOR PUBLICATION
File Name: 12a1203n.06

No. 12-5453

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Nov 20, 2012*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE EASTERN DISTRICT OF |
| | ) | TENNESSEE |
| FRANKLIN DELANO JEFFRIES II, | ) | |
| | ) | OPINION |
| Defendant-Appellant. | ) | |
| | ) | |

Before:  MOORE, GILMAN, and KETHLEDGE, Circuit Judges.

**RONALD LEE GILMAN, Circuit Judge.**  Franklin Delano Jeffries II appeals his sentence of 12-months' incarceration and 24-months' supervised release for violating his initial term of supervised release.  Jeffries contends that his sentence, which includes an upward variance of three months, was substantively unreasonable and greater than necessary given his mental-health issues. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A.    Jeffries's conviction and first sentence

Jeffries is a former United States Army officer.  He suffers from paranoia, hypomania, hallucinations, depression, bipolar disorder, delusions, and post-traumatic stress disorder from his time deployed in Iraq.  In June 2010, Jeffries posted a video to YouTube.  In the video, Jeffries performed an original song titled "Daughter's Love," in which he threatened to kill the judge

presiding over a custody case involving his daughter if the judge did not "do the right thing" at an upcoming hearing. *United States v. Jeffries*, 692 F.3d 473, 475 (6th Cir. 2012). He ultimately was indicted and convicted under 18 U.S.C. § 875(c) for communicating threats in interstate commerce. This court upheld Jeffries's conviction on appeal. *Id.* at 483.

In June 2011, the district court sentenced Jeffries to 18 months of incarceration and three years of supervised release. As a condition of supervised release, Jeffries was prohibited from possessing any controlled substance. He was also required to answer truthfully all inquiries by his probation officer and to follow the officer's instructions. Finally, the court required Jeffries to obtain mental-health treatment and take all medications prescribed pursuant to the treatment program as directed.

**B.      Jeffries's violations of the terms of supervised release and second sentence**

Jeffries was released from prison on November 3, 2011 and began serving his term of supervised release. His probation officer, Kathryn Callaway, attempted to help him find a mental-health treatment program, but Jeffries resisted. Callaway became concerned about Jeffries in the first month of his release when she saw a posting on his Facebook page stating that he had seen an Iraqi flag at a Taco Bell, which upset him and made him feel "like he wanted to hurt somebody." As a result, she directed Jeffries to refrain from using social media. But Jeffries soon began to use social media again. Beginning in February 2012, Jeffries posted updates to his Facebook page, including links to comments that he had posted on a legal blog that discussed his case. He also posted a new video to YouTube.

Jeffries finally began a mental-health treatment program in February 2012. He was prescribed Celexa, an antidepressant, and Prazosin, a blood-pressure medication. Jeffries discontinued taking his medication after a couple of days, however, and did not contact his doctors to inform them that he had done so.

On March 3, 2012, Jeffries went out drinking with friends and, during the course of the evening, he used cocaine and took a benzodiazepine pill. A couple of days later, Jeffries started a Twitter account and posted several tweets wondering whether Jesus had committed suicide. Jeffries indicated that he wanted to die and was going to kill himself. He also tweeted about his new YouTube video and linked to legal blogs discussing his case. The Department of Homeland Security notified the U.S. Marshals Service of these postings, and the U.S. Marshals in turn notified Callaway.

When confronted by Callaway, Jeffries denied having a Twitter account and denied that he was planning to hurt himself. But he admitted that he was not taking his medications, and his urine sample tested positive for cocaine and benzodiazepine. Callaway, concerned that Jeffries was in crisis, arranged for him to be examined by his mental-health treatment providers, but they determined that he was not a danger to himself or others. On March 16, 2012, however, Callaway filed a petition for revocation of Jeffries's supervised release based on his testing positive for controlled substances and failure to comply with his medical-treatment regimen.

The district court held a revocation hearing in April 2012 and heard testimony from Callaway and Jonathan Harwell, Jeffries's trial counsel. Callaway testified that Jeffries had a history of alcohol abuse. Her testimony established that she had directed Jeffries to refrain from using social

media in light of his underlying conviction, and that Jeffries understood this instruction. She also confirmed that Jeffries denied having posted anything to Twitter. Finally, Callaway testified that Jeffries initially did not see a mental-health treatment provider, and that he discontinued taking his prescribed medications after he finally saw a doctor. She stated that Jeffries "shows a pattern of failing to take the recommendations of his mental health treatment providers, and this has been going on for years." Callaway concluded that the combination of drug use, violence and threats, and refusing mental-health treatment created a "perfect storm" that "together[] could produce some serious violence to himself or to the community."

Harwell testified that he was concerned when Callaway contacted him about Jeffries's YouTube video. He did not recall whether Jeffries was prohibited from using social media, but he confirmed that Jeffries has a history of threatening other people and agreed that Jeffries's use of illegal substances was problematic.

After hearing the above testimony, the court found that Jeffries had violated the conditions of his supervised release, specifically the prohibition on illegal drug use, the requirement to follow a mental-health treatment regimen, and the requirement to follow Callaway's instruction not to use social media. Consequently, the court revoked Jeffries's term of supervised release. It stated that the offense level in the present case was Grade C, and that Jeffries had a criminal-history category I. The court then turned to Jeffries's request for a downward variance, although the court inconsistently referred to the request as for either "a variance" or "a departure and/or variance." It reviewed the factors enumerated in 18 U.S.C. § 3553(a) and found, among other things, that Jeffries's sentencing memorandum "minimize[d] the severity of his violations of supervised release,"

that Jeffries's history of violence, threats, and mental-health issues were "characteristic of a dangerous offender," and that Jeffries's original term of imprisonment was insufficient to adequately deter him from criminal activities. Based on these findings, the court denied Jeffries's "motion for a downward departure and/or variance."

The district court ultimately sentenced Jeffries to 12 months of imprisonment, followed by 24 months of supervised release. It explained its reasons for the sentence, first acknowledging the advisory U.S. Sentencing Guidelines range of three to nine months, then erroneously stating that the statutory maximum sentence was "one year imprisonment." The court then reviewed biographical information about Jeffries. It concluded that the 12-month sentence was sufficient, but not greater than necessary, to comply with the purposes of § 3553(a). The court stated that "the sentence imposed reflects the nature and circumstances of the offense, the history and characteristics of the Defendant, promotes respect for the law, provides just punishment for the offense, affords adequate deterrence to criminal conduct and provides—and protects the public from further crimes perpetrated by the Defendant." Correcting itself, the court then recited the proper two-year statutory maximum sentence.

## II. ANALYSIS

A district court may revoke a term of supervised release pursuant to 18 U.S.C. § 3583(e)(3). In revoking supervised release, the court can require that a defendant serve a new term of imprisonment. *Id.* We review sentences imposed upon revocation of supervised release under the deferential abuse-of-discretion standard. *United States v. Bolds*, 511 F.3d 568, 575 (6th Cir. 2007). An abuse of discretion exists when we are left with a "definite and firm conviction that the court

below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *United States v. Stephenson*, 928 F.2d 728, 732 (6th Cir. 1991) (internal quotation marks omitted). The abuse-of-discretion standard consists of two parts: procedural reasonableness and substantive reasonableness. *Bolds*, 511 F.3d at 578. Whereas we apply a "presumption of reasonableness . . . to sentences inside of the Guidelines range, there is no presumption *against* a sentence that falls outside of the range." *United States v. Tate*, 516 F.3d 459, 469–70 (6th Cir. 2008) (emphasis in original).

Jeffries does not challenge the procedural reasonableness of his sentence. "We will therefore limit our reasonableness review to whether the above-Guidelines . . . sentence was substantively reasonable." *United States v. Lanning*, 633 F.3d 469, 474 (6th Cir. 2011) (internal quotation marks omitted). "A sentence may be substantively unreasonable where a district court selects it arbitrarily, fails to consider pertinent factors in 18 U.S.C. § 3553(a), or gives unreasonable weight to any one factor." *United States v. Nixon*, 664 F.3d 624, 626 (6th Cir. 2011).

We begin by noting that the district court did not state clearly whether it was departing under the Guidelines or varying upward under 18 U.S.C. § 3553(a). In his brief on appeal, Jeffries assumes that the court applied an upward variance. We agree that the court's explanation in this case indicates a variance because the court discussed the § 3553(a) factors and did not refer to the bases for departure under the Guidelines. *See United States v. Poynter*, 344 F. App'x 171, 179 n.7 (6th Cir. 2009) (noting that the district court's reference to the § 3553(a) factors indicated an intent to apply a variance and not a departure). Furthermore, although "it would be helpful on appellate review if the district court would articulate whether it was departing or varying, it is of no

consequence in this case because we review both actions for reasonableness." *United States v. Wise*, 278 F. App'x 552, 566 n.3 (6th Cir. 2008).

Jeffries argues that his sentence is unreasonable because the district court merely recited the § 3553(a) factors and his biographical information. He contends that this is not enough to justify the three-month upward variance. Jeffries is presumably referring to the portions of the revocation hearing immediately preceding and immediately following the court's pronunciation of the sentence. The court first stated that it "ha[d] considered the nature and circumstances of the violation conduct, the history and characteristics of the Defendant and the policy statements in Chapter Seven of the [G]uidelines." It then pronounced the sentence. Two pages later, the court noted that it would "at this time state its reasons for the sentence imposed." It reviewed Jeffries's criminal-history category, his advisory Guidelines range, and the statutory maximum sentence. Following this recitation, the court gave a brief biographical description of Jeffries, including his mental-health history and substance-abuse problems. "Based on the foregoing," the court found "that a sentence of 12 months in this case is sufficient, but not greater than necessary, to comply with the purposes of Section 3553(a)." The court then recited the § 3553(a) factors.

What Jeffries overlooks is the more detailed discussion of the § 3553(a) factors several pages earlier in the transcript. In denying Jeffries's motion for a downward departure and/or variance, the court first recited the § 3553(a) factors, then described Jeffries's violations of supervised release, found that Jeffries had failed to comply with his treatment program, and described Jeffries's history as characteristic of a "dangerous offender." The court emphasized that Jeffries's history of violence

and threats, coupled with his failure to treat his mental-health issues, increased the need for the court to provide special deterrence in his case.

Finally, the court noted that Jeffries's previous period of incarceration evidently had been ineffective, since Jeffries began violating the terms of his supervised release almost immediately. This portion of the sentencing transcript demonstrates that the court, during the course of the proceedings, thought through and carefully weighed Jeffries's conduct in relation to the § 3553(a) factors. In particular, the court considered the nature of Jeffries's violations and the need to impose a sufficiently serious sentence to deter Jeffries from committing future offenses. *See* 18 U.S.C. § 3553(a)(1)–(2).

Jeffries has not pointed to any law requiring the repetitive weighing of the sentencing factors when the court turns to another aspect of the proceeding. And to the extent that the district court varied the sentence upward by 33 percent from the top of the applicable Guidelines range, we "consider the extent of the deviation," but "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Lanning*, 633 F.3d at 476 (citing *United States v. Gall*, 552 U.S. 38, 51 (2007)). The court took into account Jeffries's history of mental illness and substance-abuse problems. These factors differentiate this case from other supervised-release violations, and the court emphasized that the factors present here made Jeffries a special danger. In light of these findings and discussion, we find no abuse of discretion in the three-month upward variance.

Jeffries also argues that the court overstated the risk he presents. He questions the district court's assessment of his mental illness. Although Jeffries admits that he has a history of making

threats, he contends that he does not have an extensive history of acting violently. He points out that he was deemed not to be a threat after his suicidal ideations were posted to Twitter.

But Jeffries misunderstands the nature of the district court's concerns. As the government rightly points out, Jeffries's making threats led to his conviction in the first place. Jeffries seems to argue that, because he does not have a history of acting on his threats, he should not be deemed a danger and be incarcerated, but rather should receive treatment for his mental-health problems. The district court, however, considered Jeffries's history of making threats in the context of his history (however scant) of acting violently and his substance-abuse issues. These are volatile factors standing alone; in combination they could create an even greater danger to Jeffries or his community. Moreover, Jeffries had previously been offered several chances to treat his mental illness, and he had failed to follow through on these programs. We therefore conclude that Jeffries's sentence was substantively reasonable because it was not selected arbitrarily, the pertinent § 3553(a) factors were considered, and no one factor was given unreasonable weight.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.